UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

CHARLES A. BENNETT,

            Defendant.

:
:
:     15 Cr. 20 (LTS)
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Amy Lester
Assistant United States Attorney

    - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in connection with the sentencing of defendant Charles A. Bennett ("Bennett"), which is scheduled for May 19, 2016 at 2:00 p.m. For the reasons that follow, the Government respectfully submits that a sentence within the advisory range of 51 to 63 months' imprisonment, calculated pursuant to the United States Sentencing Guidelines (the "Guidelines or "U.S.S.G."), is appropriate.[1]

Over the course of approximately six years, Bennett defrauded his closest friends and family members of millions of dollars, betraying their trust and leaving many of them facing financial ruin.   To date, the Court has been provided with victim impact statements from six of Bennett's victims, which give voice to the anger, disillusionment, and despair caused by Bennett's conduct.[2]   Yet Bennett now asks this Court to impose a below-Guidelines sentence of one year and one day of imprisonment.   (*See* Def. Sent. Memo at 1).   Given the brazen nature of Bennett's conduct over an extended period of time, and the goals of sentencing – particularly just punishment, promotion of respect for the law, and adequate deterrence – a term of imprisonment within the advisory Guidelines range is warranted.   In addition, the Government respectfully requests that the Court order Bennett to forfeit the proceeds of his offense conduct, and enter an order of restitution in the amount of $5,419,007.

---

[1] As discussed below, the Government's calculation of the Guidelines range differs from that set forth in the Presentence Investigation Report ("PSR") prepared by the Probation Office ("Probation").

[2] The Government anticipates that some of Bennett's victims will request the opportunity to address the Court in person at sentencing.

## BACKGROUND

### A.  The Offense Conduct

In or about 2008, Bennett began telling close friends and family members that he had access to an investment opportunity with an exclusive and highly successful hedge fund that was run by Bennett's personal acquaintance (the "Fund").  (PSR ¶ 11).  Bennett told his future victims that he had the ability to invest their money in the Fund – which was not otherwise open to small, individual investors, through his personal account – and that their money would be used to purchase mortgaged-back securities, among other investments.  (PSR ¶¶ 12, 14).  Bennett also led most of his victims to believe that they were the only person to whom he was extending the opportunity to invest in the Fund.  (PSR ¶ 12).  Bennett used email communications and in-person conversations to convince his victims both to entrust their money to him and to reinvest that money over time, which they did, in amounts close to or exceeding $1 million in some instances.  (PSR ¶¶ 13-15).  For example, one of Bennett's victims ("Victim-1") who has known Bennett for more than 25 years and considers him a close friend, entrusted Bennett with more than $1 million to invest on his behalf, most of which was lost by Bennett.  (PSR ¶ 18).  Another of Bennett's long-time friends ("Victim-2"), lost nearly $500,000 that he had entrusted to Bennett. (PSR ¶ 21).

Because Bennett was a seemingly successful corporate lawyer, who had worked at a large, well-known law firm in New York City, and because he had extremely close personal relationships with the majority of his victims, Bennett's victims believed what he told them about the Fund and trusted that their money was safe with him.   Bennett used his victims' money to support himself and his cocaine habit, and to perpetuate the scheme by paying redemptions to some of the victims. (*See, e.g.*, PSR ¶ 16).   These redemptions lulled the victims into a sense of security that their

money was safe and well-invested.  So, too, did the misleading promissory notes and account statements that Bennett provided to the victims.  While the victims were under the false impression that their money was growing in value, the reality was that it was not.

In November 2014, when it became clear to Bennett that he could not maintain the scheme any longer, he went to a hotel, wrote a note to his victims, and jumped from a pier into the Hudson River.  (PSR ¶ 28).

### B.  The Charges, the Guilty Plea, and the Guidelines Calculation

Based on this conduct, in December 2014, Bennett was arrested and charged in a criminal Complaint with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2 (Count One), and wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 (Count Two).   Bennett was indicted on the same charges in January 2015.

On October 28, 2015, Bennett pleaded guilty before this Court to Counts One and Two of the Indictment.   In connection with the plea proceeding, the Government provided a *Pimentel* letter to defense counsel that calculated the advisory Guidelines range as 41 to 51 months' imprisonment, with a base offense level of 7 and a 16-level enhancement based on an estimated loss of between $1 million and $2.5 million.[3]

Since the time of the plea, the Government has continued to gather information from victims about the amount of money invested with Bennett, and, consequently, has determined that the loss amount is over $5 million, as reflected in the proposed order of restitution.   Accordingly, the Government submits that the Court should calculate the total offense level as follows:

---

[3] This calculation is consistent with the PSR, in which Probation recommends a sentence of 41 months.   (PSR at 20 (Sentencing Recommendation)).

- Base offense level, pursuant to U.S.S.G. § 2B1.1(a)(1): 7

- Loss amount ($5,419,007), pursuant to U.S.S.G. § 2B1.1(b)(1)(J): 18-level enhancement

- Number of victims (10 or more), pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i): 2-level enhancement

- Acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1: 3-level reduction

- Total offense level: 24

Given that Bennett is in Criminal History Category I, the applicable Guidelines range is 51 to 63 months' imprisonment.

## DISCUSSION

### A. Applicable Law

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005).   Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).   The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose.   *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).   In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be

considered.    Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater

than necessary" to comply with the purposes set forth in paragraph two.    That sub-paragraph sets

forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for
> the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational
> training, medical care, or other correctional treatment in the most
> effective manner. . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of

the offense and the history and characteristics of the defendant; (2) the statutory purposes noted

above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as

set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the

need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any

victims of the offense.    *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step

sentencing procedure.    *See United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).    First, the

Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing

judge will be entitled to find all of the facts that the Guidelines make relevant to the determination

of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines

sentence."    *Id*. at 112.    Second, the Court must consider whether a departure from that Guidelines

range is appropriate.    *Id*.    Third, the Court must consider the Guidelines range, "along with all of

the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a

Guidelines or non-Guidelines sentence.   *Id.* at 113.   In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances."   *United States* v. *Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

### B.  A Guidelines Sentence Is Warranted In This Case

A sentence within the advisory Guidelines range would be fair and appropriate in this case, given the nature and circumstances of Bennett's offense and the need to impose just punishment and promote respect for the law.

The malevolent nature of Bennett's fraud is made apparent in the victim impact statements submitted to the Court in this case.   For example, two brothers, Brian and Brendt Mullan, lost $55,000 and $200,000, respectively, but had believed – based on Bennett's false representations to them – that their investments were worth more than double those amounts.   Both brothers were very close to Bennett – as were their two other siblings, both of whom were also victimized by Bennett – and are haunted by Bennett's betrayal of their trust, particularly because they viewed him as a fourth brother.   Brian Mullan states: "There is not a day that goes by that I do not think of how hard I have worked [to build up his savings], and all for naught."   (Letter to the Court from Brian Mullan dated Mar. 15, 2016).   Brendt Mullan describes how, in a period of financial difficulty, the offer from Bennett to "allow[ ] us to piggy-back on his own investments with the hedge fund that was otherwise only available to multi-millionaires" was too good to forego. (Victim Impact Statement of Brendt Mullan dated Oct. 22, 2015).   To his "profound regret," Brendt Mullan invested his entire family's savings, money which he had intended to spend on a down payment for a home and his children's college education.   (*Id.*).   Since the scheme unraveled, the family has been evicted from their home, and their ability to fund their children's higher education is in grave jeopardy.   Brendt Mullan states: "I continue to be tormented because

6

he has destroyed what took the better part of my 54 years to build, and has diminished all my hope and dreams for a better future for me and my family." (*Id.*). These thoughts are echoed by another victim, Bennett's brother-in-law, William Murphy, who lost more than $400,000, and states: "[W]hat has been lost by me is well beyond the intangible. …I often reflect on just how long it took my wife and me to save this money." (Victim Impact Statement of William Murphy). Bennett's scheme also took a very personal toll on another victim, JaShong Trang, who states that "the stress of this [the loss of almost $100,000] has since led to … the end of a 20 year relationship (10 years marriage) with my wife, nevermind [sic] the personal mental and physical stress that this has caused." (Email from JaShong Trang dated December 17, 2015).

The seriousness of Bennett's offense is manifest. Bennett lived off his victims' money for years, and while he did not amass a personal fortune, he did fuel a lifestyle – including international travel and drug use – that he would not otherwise have been able to afford. As described above and in the PSR, Bennett systematically approached his friends and family, often at their most vulnerable moments, with the promise of a safe and lucrative investment that he himself had also made. Bennett's repeated lies, in emails, in false account statements, in misleading promissory notes, and in face-to-face conversations, enabled him to steal outright his victims' hard-earned savings.[4] This sustained and methodical criminal conduct points to the need for a

---

[4] The defense submission states that "several" of Bennett's "investors" profited from the scheme, making "significant amounts of money." (Def. Sent. Memo at 5 n.1). According to the records collected by the Government, only a very few of the more than thirty victims were net "winners" as a result of the scheme. And even those individuals thought that their investments were worth much more than what they received in redemptions while the scheme was still viable; that is, while they may have earned back their principal investment, or received some amount of "interest" or "profit," they still believed, based on the false and misleading documents that Bennett provided to them, that they were entitled to more money. Moreover, they had no knowledge that the money Bennett provided to them as part of the scheme was coming from the "investments" of other individuals.

sentence within the Guidelines range.  Such a sentence will also provide just punishment for Bennett's manipulative and purposeful actions and promote respect for the law.

In his sentencing submission, Bennett asks this Court to impose a below-Guidelines sentence of one year and one day of imprisonment, primarily so that he can quickly begin to "restore" the victims of his conduct, both financially and on a personal level.   (Def. Sent. Memo at 3).   Bennett argues that a more substantial term of imprisonment, such as one within the Guidelines range, is unnecessary because he has already (i) harshly punished himself for his conduct by attempting suicide and (ii) been deterred from any future wrongdoing.  (Def. Sent. Memo at 10-11).   Bennett's arguments largely seek to place one sentencing factor – the need to provide victims with restitution – above all others.   But notably absent from the defense submission is any concrete plan about how Bennett will actually earn the money needed to restore his victims financially.   By his own admission, Bennett has not held stable employment from which he earned steady wages for more than fifteen years.   (*See* Def. Sent. Memo at 4-5). Although he has completed volunteer work while on pre-trial supervision, there is no assurance that Bennett will be able to obtain gainful (let alone financially lucrative) employment upon his release from prison.   Moreover, a sentence of one year and one day, as urged by the defense, would not represent a just punishment for his offense, would have no general deterrent effect whatsoever, and would not promote respect for the law.

In sum, given the facts set forth above and in the PSR, the totality of the 3553(a) factors point to the need for a Guidelines sentence in this case.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that Bennett has committed a serious offense, the appropriate punishment for which is adequately reflected in the applicable Guidelines range.  Accordingly, the Government requests that the Court impose a sentence within the applicable Guidelines range of 51 to 63 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:     _/s/ Amy Lester_____
        Amy Lester
        Assistant United States Attorney
        (212) 637-2416

Dated: May 12, 2016
        New York, New York